TEXAS MEXICAN RY. CO. v. KING.
(No. 5431.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 24, 1915.)

1. CARRIERS 〰219 — CARRIAGE OF LIVE STOCK—LIABILITY OF INITIAL CARRIER.

Though an interstate shipment of horses was accompanied by a caretaker, the initial carrier is, under the Carmack amendment (Act June 29, 1906, c. 3591, 34 Stat. 593, § 7, pars. 11, 12 [U. S. Comp. St. 1913, § 8592]), liable for damages wholly caused by the fault of the connecting carriers; this being true despite the insolvency of the connecting carriers and the fact that the statute was passed so that shippers who did not accompany their shipment would be able to hold some one liable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 950, 951; Dec. Dig. 〰219.]

2. CARRIERS 〰229 — CARRIAGE OF LIVE STOCK—DAMAGES.

The measure of damages for injuries to a shipment of horses is the difference in their value at the point of destination in the condition in which they arrived and the condition in which they should have arrived, had they been properly handled.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. 〰229.]

Appeal from Jim Wells County Court; L. Broeter, Judge.

Action by J. W. King against the Texas Mexican Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Greer & Hamilton, of Laredo, for appellant. Dougherty & Dougherty and H. S. Bonham, all of Beeville, for appellee.

FLY, C. J. This is a suit instituted by appellee to recover damages to a car load of horses shipped by appellee from Hebbronville, Tex., to Monroe, La., over the lines of appellant and connecting carriers. The cause was tried by the court without a jury, and judgment was rendered for appellee for $330.

[1] Appellant was the initial carrier, and the evidence showed that a caretaker accompanied the horses, and that none of the damages occurred on appellant's line, but on the line of a connecting carrier. It is the contention by appellant that appellee should not recover, because his caretaker accompanied the horses and knew exactly where the damages were inflicted, and consequently, the reason for passing the Carmack amendment having failed, namely, the difficulty of the shipper in locating where the injury occurred, the law failed with it, or at least would not apply.

No doubt one of the strong reasons for the enactment of the Carmack amendment, which fixes liability on the initial carrier, was the difficulty of the shipper in ascertaining the line on which the negligence occurred; but no doubt, also, it was to protect shippers from the expense of instituting suits distant from their homes, perhaps in other states and in strange tribunals.

Whatever may have been the reasons actuating Congress in passing the law, it fixes absolutely the liability of the initial carrier, without regard to whether a caretaker accompanies the shipment or not, and regardless of the fact as to whether the shipper may know that the damages did not occur while the shipment was in the possession of the initial carrier. The law is as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and

〰For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed."

The law fixes absolute liability upon the initial carrier. The initial carrier is given a cause of action against its connecting carriers, and, if such carrier is insolvent, that misfortune cannot deprive the shipper of his cause of action against such initial carrier. The fact that the initial carrier might not be able to recover from the connecting line is unfortunate for the initial carrier, but cannot affect the validity of the statute.

"That there is some chance that this right of recoupment may not be always effective may be conceded, without invalidating the regulation." Railway v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7.

[2] The measure of damages was the difference in value of the horses at the point of destination in the condition in which they arrived and their value had they been properly handled. It was absolutely unnecessary for appellee to deny the allegations as to the caretaker, as to appellant's careful handling of the horses, or as to its duty ceasing at the end of its line. It did not matter if appellant did handle the horses carefully, or that an agent of appellee accompanied them. Appellant was liable.

The judgment is affirmed, with 10 per cent. damages, as prayed for by appellee.